Donald L. HAYS, Jr., and Michael C. Potter, Plaintiffs-Appellees, Cross-Appellants,

v.

JEFFERSON COUNTY, KENTUCKY, Wilbur Bilyeu and Russell McDaniel, Defendants-Appellants, Cross-Appellees.

Nos. 80–3010, 80–3011.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 21, 1980.

Decided Jan. 4, 1982.

Eugene L. Mosley, N. Scott Lilly, Asst. Jefferson County Attys., Louisville, Ky., for defendants-appellants, cross-appellees.

Joseph L. White, Pallo, White & Prizant, Louisville, Ky., for plaintiffs-appellees, cross-appellants.

\* The Honorable Benjamin F. Gibson, Judge, United States District Court for the Western

Before MERRITT and JONES, Circuit Judges, and GIBSON,\* District Judge.

BENJAMIN F. GIBSON, District Judge.

This civil rights case arose from a violent altercation between police and demonstrators on the night of September 26, 1975, at Bittersweet Shopping Center in southwestern Jefferson County, Kentucky. The final judgment below awarded plaintiff Hays compensatory damages of $20,000 against Jefferson County, and $5,000 each against Col. Russell McDaniel and Major Wilbur Bilyeu. Plaintiff Potter was awarded compensatory damages of $2,000 against Jefferson County, and $500 each against McDaniel and Bilyeu. Jefferson County was further ordered to pay $20,000 to counsel for plaintiffs as attorneys fees.

The court below, on a motion for judgment notwithstanding the verdict, remitted the jury's award of punitive damages to plaintiff Hays of $81,000 against Jefferson County and $9,000 against Bilyeu. The award of punitive damages to plaintiff Potter of $9,000 against Jefferson County and $1,000 against Bilyeu was also remitted.

The Bittersweet Shopping Center is across from Southern High School. The September 26, 1975 demonstration was one of many that took place during the preceding weeks to protest court ordered busing for school desegregation, which had been implemented on September 4, 1975 with the beginning of the school year. The demonstrations occurred at sites throughout Jefferson County and in downtown Louisville as well as the Bittersweet Center. Many of these demonstrations were peaceful and orderly, although some had resulted in varying degrees of violence.

The September 26th demonstration at Bittersweet began uneventfully. Later, a fire was built in the front of the parking lot, adjacent to Preston Highway. Al-

District of Michigan, sitting by designation.

though originally contained, the fire grew over time. The crowd also grew as the day progressed from about 50 to 75 people in the morning to approximately 300 to 500 people by late in the evening. At about 7:30 or 8:00 p. m. defendant Bilyeu made a determination that the fire was becoming dangerous and should be extinguished. He called in reinforcements and within a few minutes 40 to 50 police officers arrived. With the presence of these policemen the crowd became agitated. After consulting with some of the leaders of the demonstration Major Bilyeu sent them away and called the fire department. When the firemen arrived, however, a small group of demonstrators prevented them from putting the fire out. At this time Major Bilyeu decided that the crowd was out of control and had to be dispersed. He sent the firemen away and recalled the police. The police assembled in the Southern High School parking lot and prepared to disperse the crowd.

The descriptions of various witnesses as to what occurred shortly before and at the time the police entered the Bittersweet parking lot were conflicting. There was conflicting testimony as to the number of warnings to disperse given to the crowd, the number of demonstrators that were still at the scene at the time the police entered the parking lot, the amount of tear gas used, and what the crowd was doing.

After the warnings to disperse, tear gas was fired into the crowd. Within 15 to 30 seconds the police crossed the street and entered the crowd. The police began their advance toward the crowd before Major Bilyeu ordered them to do so. He attempted to stop them with the repeated bullhorn command "don't cross the street." When this proved ineffective, however, he took no further action to control them.

Plaintiffs' witnesses from all areas of the Bittersweet Shopping Center testified to widespread damage to vehicles caused by police officers. There was even some police testimony as to property damage caused by police. Nor was the police violence confined to property. Several witnesses testified to seeing police officers striking demonstrators and passersby with their riot sticks and pushing and kicking some of them.

The police were all wearing blue jumpsuits, gloves, helmets and gas masks. Many witnesses testified to an inability to identify any individual police officers although they attempted to do so. Defendants admit that identification patches had not been sewn onto the jumpsuits, at least in part because the suits had been obtained only a short time before this incident. There was considerable testimony that the vast majority of the officers were not wearing their nametags on the jumpsuits. A Jefferson County Police Department lieutenant testified that probably 90 percent of the police officers had no identification tags on.

During the course of the violence that evening plaintiff Potter was struck across the knuckles and repeatedly on the back and shoulders by a group of unidentified police officers. Plaintiff Hays was severely beaten and kicked into a grand mal seizure and unconsciousness by another group of five or six unidentified officers. They were also subjected to considerable verbal abuse. Both men were taken to the hospital where Potter was treated and released. Hays spent approximately ten days in the hospital. Each of the plaintiffs had been taking part in the demonstration and had taken part in others previously. Neither had had any difficulty at any other demonstration, nor was either arrested or charged with a crime for their activities at the Bittersweet Shopping Center.

The defendants in this action are the county and the chief and deputy chief of the county police department. Plaintiffs' theory of liability was based on the defendants' negligent training, supervision, and control of the unidentified officers. The trial court's instructions were based on a simple negligence standard.[1] Because

---

1. The trial court stated that the action as based on "the alleged *negligent* acts or omissions" of the defendants, (Tr. Vol. IX, at 49), that the "burden of the proof is on the plaintiffs to

this Court holds that simple negligence is insufficient to support liability of high police officials and municipalities for inadequate training, supervision, and control of individual officers, we must vacate the verdict and remand this matter to the District Court for a new trial.

The question of whether simple negligence is sufficient to support a civil rights action for the violation of constitutional rights, either under 42 U.S.C. § 1983 or directly under the constitution with jurisdiction based on 28 U.S.C. § 1331, has been troublesome to the bench and bar for some time. In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), Mr. Justice Rehnquist, writing for the majority of the Supreme Court, said "[W]hether an allegation of simple negligence is sufficient to state a cause of action under § 1983 is more elusive than it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action." *Id.* at 139–40, 99 S.Ct. at 2692. Several of the lower federal courts have addressed the question in various contexts with seemingly varying results.

■ The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees.

Without more, such a theory would allow liability on a *respondeat superior* basis—a basis expressly rejected by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) under § 1983, and by this court in *Jones v. City of Memphis*, 586 F.2d 622 (6th Cir. 1978) in a direct constitutional action pursued in accordance with the case of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Specifically, the Supreme Court in *Monell* stated: "By our decision in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), we would appear to have decided that the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability. See 423 U.S., at 370–371 [96 S.Ct., at 603–604]." *Monell v. Department of Social Services*, 436 U.S. at 694 n.58, 98 S.Ct. at 2037. The *Rizzo* case requires that there must be a direct causal link between the acts of individual officers and the supervisory defendants. *Rizzo v. Goode*, 423 U.S. at 370–71, 96 S.Ct. at 603–604. It is essentially this same concept that requires that the implementation or execution of a governmental policy or custom be shown before liability can be imposed on a municipality. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

establish by a preponderance of the evidence that the *negligence* of one or both of the officials" caused the damages (*id.*), and "that Chief McDaniel and Assistant Chief Bilyeu or either of them *negligently* supervised, trained or controlled the police officers under their command at Bittersweet Shopping Center and that such *negligence*" caused the injuries (*id.* at 50) (emphasis added).

The instructions defined the term negligence as follows:

You are further instructed that negligence is lack of ordinary care. It's the failure to exercise the degree of care which a reasonably prudent person would have exercised under the same circumstances. It may arise from doing an act which a reasonably prudent person would not have done under the same circumstances or, on the other hand, for failing to do an act which a reasonably prudent person would have done under the circumstances.

Negligence requires a foreseeable danger of injury to another and conduct which is unreasonable in proportion to the danger. A person is not responsible for the consequences of his conduct unless the risk of injury was reasonably foreseeable. The exact occurrence or precise injury need not have been foreseeable, but injury as a result of negligent conduct must have been not merely possible but probable. If a reasonably prudent person couldn't foresee any injury as a result of his conduct or if his conduct was reasonable in light of what he could foresee, there's no negligence. Conversely, there is negligence if a reasonably prudent person could foresee injury as a result of his conduct and his conduct was unreasonable in the light of what he could foresee. Ordinary and prudent care is that care which persons of ordinary prudence, . . . would use in order to avoid injury to themselves or others.
Tr. Vol. IX, at 51–52.

The language and history of § 1983 are silent as to whether supervisory officials and municipalities can be held liable for negligently having failed to adequately train, supervise, and control individual police officers who violate a plaintiff's constitutional rights. The language of § 1983 providing that a person who "subjects, or causes to be subjected" another to a deprivation of constitutional rights appears on its face to be broad enough to encompass merely negligent deprivations. The broad potential of this language is bolstered to some extent also by the Supreme Court's declaration that "[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). The trend of the case law, however, has not been in this direction. Rather, the case law has limited § 1983 so as not to reach isolated instances where a negligent failure to adequately supervise, train, or control was involved. *See, e.g., Jamison v. McCurrie*, 565 F.2d 483 (7th Cir. 1977); *Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976) (en banc); *Parker v. McKeithen*, 488 F.2d 553 (5th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974); *Edmonds v. Dillin*, 485 F.Supp. 722 (N.D. Ohio 1980); *Rheuark v. Shaw*, 477 F.Supp. 897 (N.D. Texas 1979); *Leite v. City of Providence*, 463 F.Supp. 585 (D.R.I. 1978); *Schweiker v. Gordon*, 442 F.Supp. 1134 (E.D.Pa.1977); *cf. Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–604, 46 L.Ed.2d 561 (1976). *But see, Carter v. Carlson*, 144 U.S.App.D.C. 388, 447 F.2d 358 (D.C.Cir.1971), *rev'd on other grounds sub nom., District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

A major part of the doctrinal foundation for requiring a higher degree of culpability than ordinary negligence is the concern that such a standard would unduly impede or circumscribe the performance of official duties. The courts look for some proof that a defendant has a culpable state of mind—that the action or failure to act was to some degree deliberate rather than inadvertent. The verbal formulations of this concept have varied from gross negligence or recklessness, *Owens v. Haas*, 601 F.2d 1242 (2nd Cir. 1979); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979); *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970); *Leite v. City of Providence*, 463 F.Supp. 585 (D.R.I.1978); *Schweiker v. Gordon*, 442 F.Supp. 1134 (E.D.Pa.1977); *Perry v. Elrod*, 436 F.Supp. 299 (N.D.Ill.1977), to actions or failures to act which, though not intended to harm the plaintiff, were so likely to violate plaintiffs' rights and cause them injury that the harm was "substantially likely to result," *Rheuark v. Shaw*, 477 F.Supp. 897 (N.D. Texas 1979), to "purposeful non-feasance" in the face of a duty to act, *see Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976), to an apparent requirement of intent, *see Edmonds v. Dillin*, 485 F.Supp. 722 (N.D. Ohio 1980), but in practical terms the underlying concept appears to be similar in the vast majority of the cases.[2]

■ The major impediment to simple negligence as a basis for liability of supervisory officials and municipalities, however, is the Supreme Court's decision in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In *Rizzo* the Court reversed the lower court's grant of injunctive relief against Philadelphia city and police department officials because the plaintiffs had failed to show an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct." *Id.* at 371, 96 S.Ct. at 604. The Court made it clear that a showing of "direct responsibility" for the actions of the individual officers is a prerequisite for liability. The mere "*failure to act* [even] in the face of a

---

**2.** *But see, Carter v. Carlson*, 144 U.S.App.D.C. 388, 447 F.2d 358 (D.C.Cir.1971), *rev'd on other grounds sub nom., District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) (negligent failure to train or supervise police force is actionable under § 1983). As will be seen, *infra*, it is significant that this case predates the Supreme Court's decision in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

statistical pattern" of incidents of misconduct ,was held to be insufficient to base liability on. *Id.* at 376, 96 S.Ct. at 606. Although *Rizzo* involved equitable relief in the form of a somewhat comprehensive injunction of future conduct, and federalism concerns played a not insignificant part in the decision, this same standard has been adopted and applied in cases involving monetary relief. *E.g., Leite v. City of Providence,* 463 F.Supp. 585, 590 (D.R.I.1978); *Perry v. Elrod,* 436 F.Supp. 299, 303–04 (N.D.Ill.1977); *Delaney v. Dias,* 415 F.Supp. 1351, 1354 (D.Mass.1976). The result of *Rizzo* and subsequent cases in the lower federal courts applying the standards it announced is that a failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. *See, e.g., Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I. 1978).

■ Where, as here, the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable, *e.g., Leite v. City of Providence,* 463 F.Supp. at 590, or would properly be characterized as substantially certain to result, *Rheuark v. Shaw,* 477 F.Supp. 897 (N.D. Texas 1979).

Although many of the cases cited for the above analysis were brought pursuant to § 1983, the court finds the reasoning therein equally apposite to direct constitutional actions sanctioned by the Supreme Court's reasoning in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The court, at least on the facts here presented, sees no basis for different standards in the two types of actions.

■ There remain some significant issues to be disposed of so that on remand a new trial may be properly conducted. Defendant Jefferson County challenges the judgment against it as impermissibly based on a *respondeat superior* theory of liability. *Respondeat superior* was rejected as a sole basis for municipal liability in a 1983 action by *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and in a *Bivens* action by this Court in *Jones v. City of Memphis,* 586 F.2d 622 (6th Cir. 1978). The heart of the County's challenge concerns the following jury instruction given by the trial judge below:

This is also a civil action brought by the two plaintiffs asking for damages, both compensatory and punitive, because of alleged negligent acts or omissions of high ranking Jefferson County officials, namely Police Chief Russell McDaniel and Assistant Chief Wilbur Bilyeu, arising out of actions of officers of the Jefferson County Police Force which took place on September 26, 1975 at the Bittersweet Shopping Center. A government can act in this case, only through its high ranking officials, Chief McDaniel and Assistant Chief Bilyeu. The burden is on the plaintiffs to establish by a preponderance of the evidence in this case that the negligence of one or both of the officials, Chief McDaniel and Assistant Chief Bilyeu, was a proximate cause of any injuries and consequent damages sustained by the plaintiffs.

In order for plaintiffs to recover against defendant, Jefferson County, the burden of proof is upon the plaintiffs to establish each of the following elements:

1. That officers of the Jefferson County Police Force knowingly beat, bruised and wounded plaintiffs or either of them about the body.

2. *That Chief McDaniel and Assistant Chief Bilyeu were employed by Jefferson County as Chief of Police and Assistant Chief of Police respectively, at the time of the injuries referred to herein.*

3. That Chief McDaniel and Assistant Chief Bilyeu, or either of them, negligently supervised, trained or controlled the police officers under their command at Bittersweet Shopping Center and that such negligence in supervision, training and control was the proximate cause of the injuries of plaintiffs or either of them, inflicted upon them by police officers on the occasion complained of.

You are further instructed that you may not return a verdict against the defendant, Jefferson County, if you believe from the preponderance of the evidence that the plaintiffs were injured by policemen of Jefferson County merely because of the fact that these policemen were employees of Jefferson County, Kentucky. In other words, if you believe that Chief McDaniel and Assistant Chief Bilyeu adequately supervised, trained and controlled the police officers, then you shall return a verdict for the defendant, Jefferson County, even though you may believe, from the preponderance of the evidence, that individual policemen in employment of Jefferson County knowingly beat, bruised and wounded the plaintiffs on the occasion complained of. (emphasis added)

Jefferson County argues, in spite of the last paragraph quoted above, that this instruction, in particular the emphasized section, bases its liability solely on the employment relationship between it and the other defendants, which it equates with the *respondeat superior* doctrine. This argument, however, ignores the fact that a governmental entity can only act through its principal officials, *e.g., Leite v. City of Providence*, 463 F.Supp. at 589. The distinction drawn by the trial judge in the final paragraph of the above instruction correctly distinguished the acts of the unidentified individual officers, for which Jefferson County can not be held responsible absent a policy or custom causing such conduct, *e.g., Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978);

*Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–604, 46 L.Ed.2d 561 (1976), and a failure to train, supervise, or control those officers by defendants Chief of Police McDaniel and Assistant Chief Bilyeu, whose failure, for this purpose, would be the failure of Jefferson County as well. The negligence standard in paragraph 3 of the instruction, of course, must be modified to accord with this opinion, but the instruction is otherwise proper.

■ Defendants next argue that the trial court's refusal to give a contributory negligence instruction to the jury was error. It is their contention that the plaintiffs' failure to leave the scene after police orders to disperse was contributorily negligent on their part. Such an argument on the facts of this case is groundless. Plaintiffs were not injured negligently, they were intentionally beaten by the unidentified police officers. Contributory negligence has never been a defense to intentional tortious conduct. Such conduct differs from negligence not only in degree but in kind, and in the societal condemnation attached to intentional torts, *W. Prosser, Law of Torts*, 426 (4th ed. 1971). Plaintiffs' alleged negligence in failing to leave the area in no way relates to the allegations against the defendants in this case.

Addressing the other issues raised by the parties, relating to the good faith defense, punitive damages[3] and attorney fees, is not necessary in light of today's decision. The parties will have the opportunity to further address these issues below as appropriate.

Accordingly, the judgment below is vacated, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

MERRITT, Circuit Judge, dissenting.

This case raises two sets of issues. One concerns the standard of liability of the County under 42 U.S.C. § 1983 and directly under the Fourteenth Amendment. The

3. In the recent case of *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the Supreme Court held that municipalities are immune from punitive damages in § 1983 actions.

other concerns the standard of liability of the police chief and his deputy as supervisory officials under § 1983.

## I. LIABILITY OF THE COUNTY

With respect to the County, I believe that the reasoning of *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), requires that plaintiffs show that the County followed a "policy or custom" of encouraging, or at least not discouraging, police brutality in order to recover under § 1983 or in a direct action under the Fourteenth Amendment. The District Court directed a verdict on the § 1983 claim because plaintiffs failed to offer proof of a "policy or custom" under *Monell*. But the District Court let the direct Fourteenth Amendment action under § 1331 against the County go to the jury under a negligence standard. This was error. Although it is unclear after *Monell* whether the Supreme Court will approve this Circuit's implication of a *Bivens*-type direct action under the Fourteenth Amendment, it is clear that in this Circuit the *Monell* standard also applies to direct actions against municipalities, as Judge Phillips stated for the Court in *Jones v. City of Memphis*, 586 F.2d 622, 624–25 (6th Cir. 1978). Since there is no evidence that the harm in question here resulted from a county "policy or custom," tacitly or expressly adopted or followed by the county or its officials, I would hold that the proof is insufficient to permit the case against the County to go to the jury on the direct *Bivens*-type action. In order to establish such a policy or custom, the plaintiff must at least show that the city had notice of a prior pattern of police misconduct likely to recur if no steps were taken to prevent it. As I understand the record, there was no such proof in this case.

## II. LIABILITY OF SUPERVISORY POLICE OFFICIALS UNDER § 1983

With respect to the two individual defendants, neither negligence alone, as the District Court charged the jury, nor gross negligence alone, as the majority seems to hold, should be the exclusive standard of liability for supervisory police officials under § 1983. If police officials do not directly participate in a federal constitutional violation, the question is under what circumstances should they be held accountable when their agents commit an illegal seizure of the citizen's person or engage in conduct amounting to summary punishment. Under what circumstances should such supervisory officials be liable for failing in their duty to "protect" citizens against police brutality?

Where the supervisory official does not direct, encourage, or otherwise participate in the wrong committed by his agent, it seems clear that "fault"—a "neglect" or refusal to train or take other protective action in advance—is only one element of liability. Another element is also necessary. The official must have "knowledge" that the constitutional injury is likely to occur unless action is taken. There must be some past pattern of misconduct, some prior misbehavior, or other prior act that puts the official on notice of the potential constitutional deprivation. In this case the police officials affirmatively tried to stop the advance of the policeman on the crowd of anti-busing demonstrators, and as our Court states at page 874 of its opinion, there is no allegation or proof that the brutality was "part of a pattern of past misconduct." Therefore, although a jury might find on the facts of this case a "neglect" to give police officers adequate riot training, it could not find the requisite "knowledge" or "notice" of prior misconduct.

The knowledge element is derived from the purpose of § 1983. It was part of the anti-Ku Klux Klan act of 1871, a primary purpose of which was to impose a "duty of protection" on local officials, a duty to protect blacks from the night riders and others who systematically deprive them of their civil rights. In light of this purpose, it is clear that police officials should be liable when they fail to take any steps to remedy a *known* pattern of police brutality. Where, however, there is no proof of a pattern of prior misconduct known to the

officials, they should not be held liable under § 1983 for simply failing to provide adequate training.

This "knowledge" element seems implicit in Justice Brennan's analysis of § 1983 for seven members of the Court in *Monell*, as well as in Justice Powell's concurring opinion. In analyzing the "language of § 1983" Justice Brennan states:

> Indeed, the fact that Congress did specifically provide that A's tort became B's liability if B "caused" A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent. See *Rizzo v. Goode*, 423 U.S. 362, 370-71, 96 S.Ct. 598, 603-604, 46 L.Ed.2d 561 (1976).

This sentence is followed by a footnote which states in pertinent part:

> Support for such a conclusion can be found in the legislative history.... The primary constitutional justification for the Sherman Amendment was that it was a necessary and proper remedy for the failure of localities to protect citizens .... and according to Sherman, Shellabarger, and Edmunds, the amendment came into play only when a locality was at fault or had *knowingly neglected its duty to provide protection.* (Emphasis added.)

436 U.S. at 692, 98 S.Ct. at 2036. This language from *Monell* indicates to me that knowledge of the impending constitutional violation is a necessary element of the constitutional tort.

In his concurring opinion which attempts to further explain the rationale of the majority opinion, Justice Powell notes that liability under § 1983 should be read as limited to "affirmative conduct," *id.* at 706, 98 S.Ct. at 2043, or read "as a limitation of the statutory ambit to actual wrongdoers, i.e., a rejection of *respondeat superior* or any other principle of vicarious liability." *Id.* at 707, 98 S.Ct. at 2044.

Thus, considering the language of § 1983, its original purpose and the statements of the Supreme Court concerning liability in *Monell*, I conclude that in police brutality cases against supervisory officials § 1983 requires plaintiff to show knowledge of a past pattern of misconduct or some prior misbehavior or some other prior act that puts the official on notice of the potential constitutional deprivation. Since there was no showing of the knowledge element of the wrong in this case, I would reverse and instruct the District Court to enter judgment for the supervisory police officials.

MERRITT, BROWN, KENNEDY and MARTIN, Circuit Judges, dissenting.

We dissent from the order of the Court in this case denying defendant-appellant's petition for en banc reconsideration. The case raises significant questions concerning the standard of liability of municipal and county governments and police and other supervisory officials under the Fourteenth Amendment and 42 U.S.C. § 1983. These questions frequently arise in the District Courts. The standards announced in the panel decision predicating a constitutional violation and, therefore, liability on a "failure to train" or training that is "grossly negligent" are inadequate standards as the dissenting opinion points out.

In addition to the weaknesses in the majority opinion pointed out by the dissent, it should be noted that on the county's liability the majority opinion is internally inconsistent. The District Judge granted a directed verdict on the plaintiffs' claim under § 1983 because as against the county there had been no showing of a "policy or custom" as required by *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The question then is whether a different standard applies in a direct action under the Fourteenth Amendment. Our Court's opinion in *Jones v. City of Memphis*, 586 F.2d 622, 624-25 (6th Cir. 1978) and good policy both require that the "policy or custom" standard be the same whether the action against the county is under § 1983 or directly under the Fourteenth Amendment. Since the majority decision remands the case for a new trial in the direct action under the Fourteenth Amendment against the county, it is necessarily saying that the

standard in the two types of actions is somehow different. Yet the majority opinion seems to be saying that the two standards are the same. Since the trial judge directed a verdict under § 1983, it follows that if the same standard is used in the direct action, the trial court must direct a verdict there as well. Either the trial court erred in directing a verdict under § 1983 when it found no evidence of a "policy or custom" or it erred in failing to direct a verdict on the direct action as well, if the two standards are the same. The rulings of the trial court on the § 1983 claim and the direct action claim, and the rulings by the panel majority of our Court, are inconsistent, assuming that the same standard is applied to both.

The panel decision properly recognizes that *respondeat superior* does not apply in an action against supervisory personnel and municipal governments under 42 U.S.C. § 1983 (*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) or directly under the Constitution (*Jones v. City of Memphis,* 586 F.2d 622 (6th Cir. 1978)). Nevertheless, it then holds that a municipality would be liable whenever "principle officials" thereof are liable because "[a] governmental entity can only act through its principal officials." Majority opinion at 875. This is a species of *respondeat superior* liability. On the contrary, as we read *Monell,* it is not enough to make a case of liability against a municipality under § 1983, to make such a case against a "principal official" acting within the scope of his employment. As Justice Brennan's opinion states in *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

It is one thing to hold a municipality liable for conduct of its employees, principal officials or otherwise, where the conduct is in execution of the government's "policy or custom" and quite another thing to hold the municipality liable for conduct of an employee simply because he was a "principal official" acting or not acting within the scope of his employment. For example, a chief or assistant chief of police might be "grossly negligent" (majority opinion at 874) and yet his conduct could not be said to represent official policy.