**Paul D. RYMER, Plaintiff-Appellee,**

v.

**Trooper H.A. DAVIS, et al., Defendants,**

**City of Shepherdsville, Kentucky, and Ben Stillwell, Defendants-Appellants.**

No. 83–5586.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 27, 1984.

Decided Feb. 11, 1985.

Mark E. Edison (argued), Shepherdsville, Ky., for defendants-appellants.

Harley N. Blankenship, Louisville, Ky., Peter Perlman (argued), Lexington, Ky., for plaintiff-appellee.

Before KEITH and JONES, Circuit Judges, and POTTER, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

This appeal presents the issue of whether a city may be liable under 42 U.S.C. § 1983 (1982) when the city has failed to train its police officers or has trained its police officers in a way that was so reckless or grossly negligent that future police misconduct is almost inevitable or substantially certain to result. We hold that under the circumstances of this case, it was not error to find the city liable for such a failure.

On June 13, 1979, Paul Dale Rymer participated in a convoy on an interstate in Kentucky. The convoy was stopped by law enforcement officials of the State of Kentucky, the City of Shepherdsville, the City of Lebanon Junction, and Bullitt County. Rymer and three other truck drivers were arrested. Officer Ben Stillwell beat and kicked Rymer violently during the arrest. Rymer was treated by an emergency medical technician who recommended that Rymer be taken to a hospital. Officer Stillwell rejected this recommendation. Rymer and the others were jailed for the night. The next morning the arrested individuals were taken to the county court to enter their pleas. They were then released.

■■■ Rymer subsequently filed a complaint in the district court under 42 U.S.C. § 1983. The complaint named numerous defendants. The court dismissed the complaint as to some of the defendants and directed a verdict as to the other defendants except Officer Stillwell and the City of Shepherdsville (City). The jury returned a verdict against Stillwell for $32,000 as compensatory damages and $50,000 as punitive damages and against the City for $25,000 as compensatory damages. A judgment was entered upon that verdict on May 26, 1983. The defendants' motions for both a new trial and judgment notwithstanding the verdict were denied. Both defendants appeal and argue that the amount of the award is excessive. Further, the City argues that the district court erred by not dismissing the City prior to submitting the case to the jury and, alternatively, argues that its motion for judgment notwithstanding the verdict should have been granted.

The City's contention must be treated as a request for a new trial because the City did not move for a directed verdict and, therefore, judgment notwithstanding the verdict in favor of the City would have been inappropriate. A party against whom a verdict is rendered must comply with Federal Rule of Civil Procedure 50 to obtain appellate review of a claim that he is entitled to judgment as a matter of law. If

* The Honorable John W. Potter, District Judge, United States District Court for the Northern District of Ohio, sitting by designation.

a party moves for judgment notwithstanding the verdict after having failed to move for a directed verdict at the close of the evidence, an appellate court cannot order judgment for him. Fed.R.Civ.P. 50(b); *see Trotter v. Todd,* 719 F.2d 346, 350 (8th Cir.1983). If the evidence was insufficient as a matter of law, however, the court can order a new trial. C. Wright & A. Miller, Federal Practice and Procedure §§ 2537, 2540. Because the City is arguing that the evidence was insufficient as a matter of law, we will treat the City's argument as a request for a new trial.

The evidence viewed most favorably to the non-moving party, Rymer, showed that during Rymer's arrest, Stillwell beat and kicked Rymer many times and hit Rymer once in the stomach and head with a nightstick. Stillwell refused to accept an emergency medical technician's suggestion that Rymer needed x-rays. Evidence of the injuries included photographs and the testimony of Rymer, the jailer, and the Bullitt County Sheriff. The evidence further showed that, at the time of the incident, the City had no rules or regulations governing its police force. Nor did the City require any pre-employment training. The initial training received by the officers was on-the-job training. Although the City required the officers to complete forty hours of training each year after being hired, none of the training received by Officer Stillwell instructed him on arrest procedures or treatment of injured persons. The City's police officers used their own discretion in the arrest and treatment of persons suspected of criminal activity.

The theory of liability put before the jury in this case was that it should find for the plaintiff, Rymer, if it found by a preponderance of the evidence that the City trained its police officers in a way that was so reckless or grossly negligent that future police misconduct was almost inevitable or substantially certain to result. This theory of liability conforms to our decision in *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.1982), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1983). In *Hays,* we held that "a municipality may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable ... or would properly be characterized as substantially certain to result...." *Id.* at 874 (citations omitted). *Hays* has since been questioned by a number of courts because of our failure to recognize negligence as a basis for liability of supervisory officials and municipalities. *Branden v. Allen,* 719 F.2d 151, 153–54 (6th Cir.1983); *Lopez v. Ruhl,* 584 F.Supp. 639, 649 & n. 7 (W.D.Mich.1984); *Means v. City of Chicago,* 535 F.Supp. 455, 462 (N.D.Ill.1982); *see also Hirst v. Gertzen,* 676 F.2d 1252, 1263 (9th Cir.1982). Because the district court instructed the jury on gross negligence, we are not presented with the question of negligence as a basis for liability.

 We are, however, presented with the question of whether the City's failure to train its police officers regarding arrest procedures was a proper basis for liability. In *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality may be held liable under section 1983 if either a municipality's official policy or one of its customs is the source of the injury. The Court noted that the case unquestionably involved official policy and that it, therefore, had no need to address the full contours of municipal liability under section 1983. *Id.* at 694–95, 98 S.Ct. at 2037–38.

To prevail against the City, Rymer had to show that he was deprived of a constitutional right either as a result of a "policy statement, ordinance, regulation, or decision adopted and promulgated by the City's governing body" or as a result of a " 'governmental "custom" even though such a custom' had not received formal approval through the City's official decisionmaking channels." *Williams v. Butler,* 746 F.2d 431, 435 (8th Cir.1984) (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036). In *Hays,* 668 F.2d at 874, this Court joined a number of

courts that have interpreted *Monell* to hold that a municipal custom that authorizes or condones police misconduct can be inferred when the municipality has failed to train or has been grossly negligent in training its police force.[1] *See, e.g., Herrera v. Valentine,* 653 F.2d 1220, 1224 (8th Cir.1981); *Owens v. Haas,* 601 F.2d 1242, 1246–47 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Popow v. City of Margate,* 476 F.Supp. 1237, 1245–46 (D.N.J.1979); *Leite v. City of Providence,* 463 F.Supp. 585, 590–91 (D.R.I.1978); *see also Means v. City of Chicago,* 535 F.Supp. 455, 462–63 (N.D.Ill.1982). Further, we implicitly agreed with the Second Circuit, *Owens,* 601 F.2d at 1246–47, that official acquiescence may be inferred from the lack of training even in the face of only a single brutal incident of police misconduct. *Hays,* 668 F.2d at 870–71, 874; *see also Leite,* 463 F.Supp. at 590. *Contra Gilmere v. City of Atlanta,* 737 F.2d 894, 904 (11th Cir.1984); *Languirand v. Hayden,* 717 F.2d 220, 227 (5th Cir.1983).

It is not enough, however, that the plaintiff demonstrate a general failure to train. There must exist a causal relationship between the failure to train and the conduct of the police officer. *See Means v. City of Chicago,* 535 F.Supp. 455, 462 (N.D.Ill. 1982) (while evidence of a failure to provide crowd control training might be relevant to a charge of overreaction to crowd hostility, it would have no bearing on an incident involving a single victim). In the instant case, the plaintiff proved that the City had a custom of allowing its police officers to determine when and how to arrest without the benefit of supervisory regulations. The City gave its officers carte blanche authority to do as they wished during an arrest. *See Williams v. Butler,* 746 F.2d 431 (8th Cir.1984) (city had custom of giving judges carte blanche authority in making personnel decisions and is liable for constitutional injuries arising therefrom). Further, Officer Stillwell had received no training on arrest procedures or the treatment of injured persons. The City's failure to train its police officers and the City's bestowal of carte blanche authority to its police officers were directly related to the ultimate abuse Rymer received during the arrest. Consequently, Rymer had introduced sufficient evidence to go to the jury. The jury obviously concluded that the training received by Stillwell, or the lack of it under the circumstances, was so reckless or grossly negligent that future police misconduct was almost inevitable or substantially certain to result. Because this finding is supported by the evidence, we uphold the jury verdict.

Both the City and Stillwell argue that the amount of the verdict was excessive. We disagree with the contention that "the trial court abused its discretion by granting an award so large as to shock the judicial conscience," *Thompson v. National Railroad Passenger Corp.,* 621 F.2d 814, 827 (6th Cir.), *cert. denied,* 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980), and thus do not so find.

Accordingly, the judgment below is AFFIRMED.

---

**1.** The type or amount of training necessary to avoid the inference of a custom that authorizes or condones police misconduct is properly a jury question. We note, however, that numerous resources are available to municipalities to guide them in supervising police officers and in preventing instances of police brutality. *See, e.g.,* George C. Edwards, *The Police on the Urban Frontier: A Guide to Community Understanding* (1968); Report of the National Advisory Commission on Civil Disorder (1968); D. Hanna, *A Guide to Primary Police Management Concepts* (1971); Institute on Police Management for Supervisory and Administrative Personnel, *Police Management for Supervisory and Administrative Personnel* (1963); L. O'Donnell, *Deadly Force: The True Story of How a Badge Can Become A License to Kill* (1983); L. O'Leary, *The Selection and Promotion of the Successful Police Officer* (1979); H. Russell, *Understanding Human Behavior for Effective Police Work* (1976); P. Whisenand, *The Effective Police Manager* (1981).