**Douglass TOMPKINS, Plaintiff,**

v.

**Rick FROST, Ernest Eckert, Genesee County and the Sheriff of Genesee County, Defendants.**

**No. 85–CV–40542–FL.**

United States District Court, E.D. Michigan, S.D.*

March 16, 1987.

---

* This is a southern division case being heard in Bay City, MI. in the northern division of the Eastern District of Michigan due to a judicial disqualification.

Glenn N. Lenhoff, Flint, Mich., for plaintiff Tompkins.

Christopher J. Johnson, Livonia, Mich., for defendants Frost and Eckert.

Richard Barron, Flint, Mich., for defendants County and Sheriff.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

This is a civil rights action under 42 U.S.C. § 1983 in which the plaintiff claims that he was wrongfully arrested and beaten by defendant sheriff's deputies Frost and Eckert. Counts IV and V of his complaint assert that the defendant county and sheriff[1] had a policy and custom of inadequate training and supervision and that the county failed to investigate the use of excessive force by the sheriff's deputies. The county defendants filed a motion for summary judgment which was taken under advisement in anticipation of the Supreme Court's decision in *City of Springfield v. Kibbe,* — U.S. —, 107 S.Ct. 1114, 93 L.Ed.2d 293 (1987). Because of the Court's dismissal of certiorari in that case, the issues raised in the motion will be decided based upon existing case law.

■ It is clearly established in the sixth circuit that an action for inadequate police training and supervision does exist under section 1983. *Rymer v. Davis,* 754 F.2d 198 *remanded* 473 U.S. 901, 105 S.Ct. 3518, 87 L.Ed.2d 646, *on remand* 775 F.2d 756 (1985); *Hays v. Jefferson County, Ky.,* 668 F.2d 869 (6th Cir.1982). It is equally well established that a Michigan county is liable for the wrongful actions of the county sheriff. *Marchese v. Lucas,* 758 F.2d 181 (6th Cir.1981); *Carroll v. Wilkerson,* 782 F.2d 44, 45 (6th Cir.1986). Accordingly, the aspects of the defendants' motion which assert that the plaintiff's complaint does not state a cause of action will be denied.[2]

The remaining issues are whether the defendants are entitled to summary judgment on counts IV and V. Under rule 56, the defendants must demonstrate to the court, with or without affidavits and evidence, that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. —, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If they make such a showing, it is then incumbent on the plaintiff to point to or produce evidence showing the existence of a genuine issue of material fact to preclude summary judgment.

## I

■ Although an action exists for inadequate police training, two of its elements are very severe. First, mere negligence in training is insufficient; the failure must be so gross in nature that future police misconduct is substantially certain to result. *Hays, supra.* Second, even when gross negligence is demonstrated, a strong causal link must be established between the inadequacies in the training or supervision and the specific wrongdoing which injured the plaintiff. *Rymer, supra* at 754 F.2d at 201. In *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the chief justice, writing for the majority of the court, indicated how strong a causal connection is required;

> We express no opinion on whether a policy that itself is not unconstitutional, such as the general "inadequate training" alleged here, can ever meet the policy requirement of Monell. In addition, even assuming that such a policy would suffice, it is open to question whether a policymaker's "gross negligence" in establishing police training practices could establish a policy that that constitutes a "moving force" behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policymaker would be required.

\* \* \* \* \* \*

1. The sheriff is specifically sued in his official capacity only.

2. The motion was taken under advisement after oral arguments were heard on February 26, 1987.

   The county defendants argue that provisions in Michigan law state that a county is not responsible for the actions of its elected sheriff. This argument was squarely rejected in *March-*

*ese v. Lucas, supra.* Defendants also argue that the plaintiff's complaint should be dismissed because of a failure to plead specific facts. This contention is wholly without merit since the federal rules require only a "short and plain" statement of the claim, and plaintiff has more than adequately stated his claims. *See* F.R.C.P. 8(a).

In this regard, we cannot condone the loose language in the charge leaving it to the jury to determine whether the alleged inadequate training would likely lead to "police misconduct". The fact that a municipal policy might lead to police misconduct is hardly sufficient to satisfy Monell's requirement that the particular policy be the "moving force" behind a constitutional violation. There must at least be an affirmative link between the training deficiencies alleged and the particular constitutional violation at issue.

471 U.S. at 824 n. 7–8, 105 S.Ct. at 2436 n. 7–8, 85 L.Ed.2d at 804 n. 7–8. More recently, four justices dissenting from the dismissal of certiorari in *Kibbe* wrote,

> When the execution of municipal policy does not compel a constitutional violation ... the causal connection between municipal policy and the deprivation of constitutional rights becomes more difficult to discern. In some sense, of course, almost any injury inflicted by a municipal agent or employee ultimately can be traced to some municipal policy. Finding § 1983's causation requirement satisfied by such a remote connection, however, would eviscerate *Monell's* distinction, based on the language and history of § 1983, between vicarious liability and liability predicated on the municipality's *own* constitutional violations. The limits on municipal liability imposed by § 1983 require more careful analysis, in each instance, of the municipal policy alleged in the case, and whether a jury reasonably could conclude that the city's conduct was the moving force in bringing about the constitutional violation.

— U.S. at ——, 107 S.Ct. at 1120.

In this case, it is plaintiff's claim that he was approached by Officers Frost and Eckert after backing a semi-truck into his driveway. The officers allegedly accused him of committing a traffic infraction. The plaintiff argued and it is alleged that plaintiff was subjected to a brutal and unprovoked attack from both officers. Plaintiff was then arrested for assault.

Defendants submit that they were not negligent in the training of the officers. The department rules and regulations concerning arrest have been submitted in support of the motion. The regulations allow "reasonable and necessary force ... to apprehend or restrain" a person being arrested. Officers are warned not to use more force than is reasonably necessary. (¶ 3.7). Both deputies received training at police academies.

Plaintiff presents deposition evidence showing that the deputies received little or no training on "civil rights." Plaintiff cites testimony where a deputy sheriff could not name a single "judicial decision, statute or constitutional term" dealing with excessive force. No deficiencies in training which concerned proper arrest procedures, when to arrest and when not to, or the appropriate amount of force to use in a given situation has been shown.

■ The defendants have satisfied their obligations under *Celotex Corp.* by pointing out to the court that there is no issue of material fact. Plaintiff has responded by pointing to absence of legal training on civil rights. However, there is no requirement that police officers be well-versed in the area of civil rights. Rather, the constitution requires that cities and counties train their officers in arrest procedures, policies on the use of force and the various other attributes of policework. Civil rights is within the expertise of lawyers; policework is the expertise of policemen and policewomen. Only when a city or county grossly fails to train its police officers in how to do their jobs do they risk liability under section 1983. Although it may be desirable to do so, legal training on civil rights is not constitutionally mandated.

Even if civil rights were a required element of a police curriculum, the court cannot find evidence that would create a question of material fact concerning gross negligence. Nor is there any evidence that any failure to train or supervise was the "moving force" behind the alleged assault and wrongful arrest of the plaintiff.

Accordingly, the defendants' motion for summary judgment on the failure to train and supervise claims will be granted.

## II

Plaintiff has asserted in count V that the county ratified the unlawful actions of the sheriff's deputies by failing to undertake an investigation after the alleged excessive force was reported to an assistant prosecuting attorney. The assertion of this ratification by failure to investigate claim is apparently based on the sixth circuit decision of *Marchese v. Lucas, supra,* where the court held that Wayne County, acting through its sheriff's department, had ratified the misconduct of deputies by failing to investigate. 758 F.2d at 188. Plaintiff broadly reads *Marchese* as holding that any failure to investigate a report of police misconduct creates municipal liability and in effect, by-passes the requirements of *Monell v. Department of Social Services of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed2d 611 (1978).

Such an interpretation of *Marchese* is illogical. Wrongful conduct after an injury cannot be the proximate cause of the same injury. Moreover, *Monell* forbids a finding of county liability except where the misconduct is pursuant to an official policy or custom and is also the "moving force" behind the plaintiff's injury. The misconduct by the county must also be either intentional or at the least, grossly negligent. *See Hays, supra.* The Fourteenth Amendment does not provide a remedy for negligence. *Daniels v. Williams,* 474 U.S. 327, ——, 106 S.Ct. 662, 667, 88 L.Ed2d 662, 671 (1986). *Marchese,* read in light of *Monell* and its progeny, makes a post-injury failure to investigate a fact which may permit an inference that the misconduct which injured the plaintiff was pursuant to an official policy or custom.[3] Any other reading would permit *respondeat superior* liability for the failure to undertake an investigation and would thus by-pass the stringent proximate cause requirements discussed in *Tuttle* and *Kibbe, supra.*

■ The strength of the inference which could be drawn from a failure to investigate would vary from case to case depending on the nature of the notice given to the responsible person in the *Monell* entity and whether that person intentionally or recklessly failed to take appropriate action. By analogy to the Supreme Court's decision in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), a willful failure to investigate by a county policymaker would create a very strong inference that the underlying incident of misconduct was pursuant to a policy or custom. In such a case, the failure to investigate would also be pursuant to a policy but would lack any proximate cause to the previously inflicted injury.[4] To the contrary, a merely negligent or inadvertent failure to investigate would have little, if any, probative value as to whether a policy previously existed.

As presented in this case, *Marchese* could allow an inference that the county's failure to train and supervise its officers was a pre-injury policy from the county's post-injury failure to investigate. However, the inference cannot be made here for several reasons. First, the only notice to the county of the misconduct were the remarks of a criminal defense attorney to an assistant prosecutor during plea negotiations. Such a claim, made in the context of attempting to bargain away criminal charges, is not of the type that must necessarily lead to an investigation. Plaintiff made no formal, or informal, complaint of police brutality. Second, the assistant prosecuting attorney was not shown to be a policymaker in the area of investigating police misconduct. No evidence in the record indicates any responsibility on his part to investigate police misconduct. Such functions are held by the sheriff, and

---

3. Whether such an inference, standing alone, could support a finding of county liability is doubtful in light of *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed2d 791 (1985).

4. However, as to later injuries from the same type of misconduct, a failure to investigate which is shown to otherwise be a policy under *Monell* could conceivably be a actionable as a claim in and of itself.

perhaps the prosecutor, but not by every agent of each of them. Third, the record is devoid of evidence that the failure of the county to investigate was willful, reckless or grossly negligent. Plaintiff's proofs barely establish a genuine issue of fact that the county received notice and entirely fail to create a question of fact beyond the notice.

Accordingly, the court finds that no genuine issue of material fact exists as to the alleged failure to investigate claim. As an independent claim, it fails for lack of proximate cause and it fails to support plaintiff's failure to train and supervise claim because no facts indicating gross negligence or intent have been shown. The defendants' motion for summary judgment on count V will be granted.