IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2009 Session

## MICHAEL J. CALDERONE v. GLENN CHRISMAN, CHIEF OF POLICE, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY, THE MURFREESBORO CITY POLICE DEPARTMENT, THE CITY OF MURFREESBORO, TRUMAN JONES, SHERIFF, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY, RUTHERFORD COUNTY SHERIFF DEPARTMENT, AND RUTHERFORD COUNTY, TENNESSEE

Appeal from the Circuit Court for Rutherford County
No. 50207     Larry B. Stanley, Jr., Judge

No. M2009-00328-COA-R3-CV - Filed December 29, 2009

This appeal involves § 1983 claims against a county and its sheriff on the basis of injuries allegedly sustained by the plaintiff while in the custody of the sheriff's department. We conclude that the trial court erred in denying the sheriff's motion for summary judgment in his individual capacity because the plaintiff did not produce any evidence to rebut the sheriff's testimony that he had no involvement in or knowledge of the events in question. We further conclude that the trial court erred in denying the county's motion for summary judgment because there was no evidence of any causal connection between a county policy or custom and the plaintiff's alleged injuries.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

D. Randall Mantooth, Nashville, Tennessee, for the appellants, Truman L. Jones, Jr. and Rutherford County, Tennessee.

James D.R. Roberts, Jr., Janet L. Layman, and Henry H. Carpenter, Jr., Nashville, Tennessee, for the appellee, Michael J. Calderone.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Michael Calderone was a passenger in a car pulled over by officers of the Murfreesboro Police Department on the evening of June 7, 2003. Mr. Calderone admits that he and the driver had drunk "a bunch of beer" before they were pulled over. The driver was detained for suspected driving under the influence. After checking Mr. Calderone's background information, the officers detained him on an outstanding capias warrant and placed him in the patrol car. On the way to the county jail, the patrol car collided with a car parked in an area designated for traffic. According to Mr. Calderone, he sustained serious injuries as a result of this collision. Emergency medical personnel were called and took Mr. Calderone to the hospital for treatment.

After receiving treatment at the hospital, Mr. Calderone was transported to the county jail, where he went through booking and was placed in a holding cell with other detainees. It is undisputed that Mr. Calderone was still intoxicated. He and another detainee got into an altercation in the holding cell, and several officers intervened to separate the two men. A struggle ensued involving Mr. Calderone and detention officers.[1] The officers moved Mr. Calderone to another cell, where he alleges that someone behind him violently pushed his head into a protruding corner, resulting in injuries to his head. Mr. Calderone was then returned to the hospital for medical treatment. He stayed in the county jail for 75 days.

On May 28, 2004, Mr. Calderone filed this lawsuit against Glenn Chrisman, the Murfreesboro chief of police, individually and in his official capacity; the Murfreesboro police department; the city of Murfreesboro; Truman Jones, the sheriff, individually and in his official capacity; the Rutherford County sheriff's department; and Rutherford County. In count I of his complaint, Mr. Calderone alleged negligence on the part of the officers driving the police patrol car and the other defendants vicariously.[2] In count II, Mr. Calderone asserted claims under 42 U.S.C. § 1983 on grounds that he "received personal injuries, was kept in custody for a period of time not substantiated by the charges against him, was denied appropriate medical treatment for his injuries and was assaulted and abused by both other detainees and employees of the Murfreesboro Police Department and Rutherford County Sheriff Department." All of the defendants filed answers denying liability in August 2004. In March 2006, the city defendants filed an amended answer giving more specific grounds for their denial of liability.

The parties engaged in discovery, and on November 20, 2008, Sheriff Jones, the sheriff's department, and the county filed a motion for summary judgment supported in part by an affidavit by Sheriff Jones. The trial court entered an order on January 9, 2009, in which it found that Sheriff Jones in his official capacity and the sheriff's department were "superfluous defendants" and

---

[1] One of the officers filed assault charges against Mr. Calderone.

[2] Count I does not make allegations with respect to the sheriff or the county and is not involved in this appeal.

dismissed the claims against them. The court concluded that summary judgment would be "premature and improper" as to Sheriff Jones individually and the county because there remained genuine issues of material facts in dispute. Therefore, the court overruled the motion for summary judgment with respect to the county and the sheriff in his individual capacity.

Sheriff Jones filed a notice of appeal as of right under the collateral rule doctrine. *See Fann v. Brailey*, 841 S.W.2d 833, 835 (Tenn. Ct. App. 1992). Rutherford County sought and received permission from the trial court to seek an interlocutory appeal. This court granted the county's application for an interlocutory appeal and ordered that the sheriff's and county's appeals be consolidated. On appeal, Sheriff Jones and Rutherford County argue that the trial court erred in denying their motion for summary judgment. They further request that this court direct the entry of final judgment pursuant to Tenn. R. Civ. P. 54.02 with respect to the plaintiff's claims against them.

STANDARD OF REVIEW

In reviewing a summary judgment, this court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisified. *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). We must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.*; *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). If there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd*, 847 S.W.2d at 211; *EVCO Corp. v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, a moving party must negate an element of the opposing party's claim or "show that the monmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 (Tenn. 2008).

ANALYSIS

We will examine the liability of the sheriff and the county separately as the claims against them present somewhat different issues.

Sheriff Jones

Mr. Calderone's complaint does not allege and there is no evidence of any direct involvement by Sheriff Jones in the alleged acts of misconduct by the sheriff's department. His § 1983 action against Sheriff Jones is based on supervisory liability.

Caselaw has established that the liability of supervisory personnel under 42 U.S.C. § 1983 cannot be based solely upon respondeat superior or the right to control one's employees. *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S.

658, 694 n.58 (1978), and *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)). Rather, a plaintiff "must allege and demonstrate that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the employee." *Luckett v. Turner*, 18 F. Supp. 2d 835, 838 (W.D. Tenn. 1998) (citing *Hays*, 668 F.2d at 874). In this case, Sheriff Jones submitted an affidavit expressly denying any knowledge of the events in question as well as any training that might have led to the alleged improprieties. The affidavit states, in part, as follows:

> I have never acquiesced in, condoned, or encouraged any employee of the Rutherford County Adult Detention Center to keep Mr. Calderone in custody for a period of time not substantiated by the charges against him, to deny him appropriate medical treatment for his injuries, to allow other detainees to assault or abuse him, or to assault or abuse him while he was detained at the Rutherford County Adult Detention Center on or around June 7, 2003;

In his deposition testimony, Mr. Calderone acknowledged that he had no knowledge of any involvement in or knowledge by Sheriff Jones with respect to the relevant events:

> Q. Anyway, do you have any knowledge that would suggest that Sheriff Jones was personally aware of anything in connection with how the guards treated you that night?
>
> A. At the time, no, I don't think he had anything to do with it.
> . . .
>
> Q. As far as you claim that the medical staff did not provide you with appropriate medical treatment, are you aware of anything to indicate that [Sheriff Jones] was aware of that at the time it was going on?
>
> A. No.
>
> Q. Okay.
>
> A. Or he might not have been told. He wasn't aware of it.
> . . .
>
> Q. Are you aware, though, whether the sheriff indeed had any knowledge of you being kept in the jail longer than you claim you should have been kept there?
>
> A. That there, I don't know.

On appeal, Mr. Calderone argues that there is evidence in conflict with Sheriff Jones's affidavit because Joanne Patricia LeCroy, an officer with the Rutherford County Sheriff's Department, testified in her deposition that she took out a warrant against Mr. Calderone that night

for injuries he allegedly inflicted upon her. According to Mr. Calderone's reasoning, this warrant "placed or should have placed Sheriff Jones on notice of the facts surrounding the incident," thereby requiring him to investigate the propriety of his officers' actions. Even if Sheriff Jones learned of the incident involving Mr. Calderone and his officers shortly after the events occurred, we know of no basis upon which this knowledge would subject him to § 1983 liability since such facts do not reflect any prior knowledge of or acquiescence in the actions of the officers.

The disputed facts relied upon by Mr. Calderone are not material to the § 1983 claim against Sheriff Jones. The sheriff negated an essential element of Mr. Calderone's claim, namely the sheriff's knowledge of or acquiescence in the incidents in question, so the burden of production shifted to Mr. Calderone, who failed to produce any countervailing evidence. The undisputed facts provide no basis for supervisory liability, and the trial court erred in failing to grant Sheriff Jones's motion for summary judgment. Because of this conclusion, we need not address Sheriff Jones's argument that he was also entitled to summary judgment on the basis of qualified immunity.

## County

A county can be liable under § 1983 if the plaintiff has been deprived of a constitutional right and the county is responsible for that violation. *Doe v. Claiborne County*, 103 F.3d 495, 505-06 (6th Cir. 1996). The county's responsibility cannot be based upon a theory of respondeat superior. *Monell*, 436 U.S. at 691. Rather, the plaintiff must prove that "a municipal policy or policy of inaction was the moving force behind the violation." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)). Thus, a county can be subject to § 1983 liability "when execution of a government's policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694.

The complaint in this case does not specifically allege a county policy or custom as a cause of Mr. Calderone's injuries. In his affidavit, Sheriff Jones testified that the county gave its employees appropriate training with regard to the protection and care of detainees:

> The Rutherford County Adult Detention Center trains its employees to use the least amount of force necessary to maintain control of detainees at the Rutherford County Adult Detention Center, to protect detainees from assaults by other detainees, to see that injured employees receive appropriate medical treatment in a timely manner, and to avoid keeping detainees in custody any longer than required by court order. To my knowledge, there was no custom, pattern, policy, or practice on or around June 7, 2003, that would have resulted in Mr. Calderone being kept in custody at the Rutherford County Adult Detention Center for a period of time not substantiated by the charges against him, being denied appropriate medical treatment for his alleged injuries, being assaulted and abused by other detainees, or being assaulted and abused by employees of the Rutherford County Sheriff's Department.

When asked in interrogatories about any applicable county custom or policy, Mr. Calderone stated only that he was denied appropriate medical care and was held in custody for too long. In his response to the county's statement of material facts, Mr. Calderone stated that he had "no knowledge as to the existence or non-existence of any custom, pattern, policy, or practice in place on or around June 7, 2003." He further asserted that "the facts would strongly indicate that a custom or pattern of abuse was present on that date." On appeal, Mr. Calderone emphasizes that, despite significant injuries from the car accident, he was placed in a holding cell with other detainees. He argues that he "suffered a second set of injuries [after the car accident] as a result of Rutherford County's deliberate indifference to his previously injured condition, as well as the intentional and violent acts of its officers."

A county's "deliberate indifference" to the rights of persons with whom its employees come into contact can, in certain circumstances, constitute a "custom" for purposes of § 1983 liability. *City of Canton*, 489 U.S. at 388. Under § 1983, a custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691. Municipal liability attaches only when "a deliberate choice to follow a course of action is made from among various alternatives" by city or county policymakers. *City of Canton*, 489 U.S. at 389 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). Thus, inadequate training must amount to a county policy. *Id.* This could occur when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. In this case, there is no evidence of any previous problems with assaults or inadequate medical care involving county detainees and no evidence of inadequate training to which county officials were deliberately indifferent.

Although Mr. Calderone argues that genuine issues of material fact remain, we find none. The county, through Sheriff Jones's affidavit, shifted the burden to Mr. Calderone to produce some evidence of a relevant county policy or custom, and Mr. Calderone produced no facts indicating that the county had any policy or custom that caused the alleged injuries. The trial court erred in denying Rutherford County's motion for summary judgment.

We decline the appellants' request to direct the trial court to enter a final judgment pursuant to Rule 54.02 but will leave that issue for determination by the trial court.

CONCLUSION

We reverse the trial court's denial of summary judgment to Sheriff Jones in his individual capacity and to Rutherford County. Costs of appeal are assessed against Mr. Calderone, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE