895 F.2d 1413
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary E. HANNA, Plaintiff-Appellant/Cross-Appellee,
v.
COUNTY OF WOOD; Soldiers' Relief Commission; Royce E.
Beaverson, Defendants-Appellees/Cross-Appellants.
 Nos. 88-3893, 88-4057 and 88-4084.
 United States Court of Appeals, Sixth Circuit.
 Feb. 6, 1990.
 
 Before KEITH and BOGGS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Mary E. Hanna sued the County of Wood, Ohio; the County of Wood Soldiers' Relief Commission (the "Commission"); and Royce E. Beaverson, the Commission's Service Officer, in the Northern District of Ohio for sexual discrimination. The equitable issues were tried to the court, the legal issues to a jury. After the jury returned a verdict in favor of Hanna, the district court granted two motions for judgment notwithstanding the verdict. For the following reasons, we affirm in part and reverse in part.
 
 
 2
 * The Commission is a county agency in Bowling Green, Ohio. By statute, each of Ohio's eighty-eight counties has a Commission, charged with the responsibility of assisting veterans of the United States military service in obtaining benefits. Each Commission is composed of five commissioners, appointed by the common pleas court judges in that county. At all relevant times, the Commission in Wood County had three staff members. Beaverson held the statutory position of service officer. Hanna held the position of caseworker/investigator. The third staff member, Virginia Telecky, was a secretary. The service officer must be an honorably discharged veteran, and the investigator must be an honorably discharged veteran or the spouse or child of such a veteran. Hanna served four years (1968-1972) in the U.S. Air Force as a medical service specialist. After her honorable discharge, in May 1974, Hanna applied for the caseworker/investigator opening at the Commission. On June 10, 1974, Hanna began work for the Commission.
 
 
 3
 Both sides agree that relations between Hanna and Beaverson were fairly congenial between 1976 and August 1984. Around August 1, 1984, Hanna joined a labor union, the Communications Workers of America. After this date, tensions between Beaverson and Hanna began to mount.
 
 
 4
 On August 27, 1984, Hanna wrote a letter to the Commission, demanding a raise and a new title. The letter threatened further legal action if the Commission did not act favorably on her requests.
 
 
 5
 The Commission decided not to give Hanna a raise or a new title, citing its policy of giving all employees the same percentage wage increase at the same time. On September 24, 1984, the Commission eliminated Hanna's exclusive use of an automobile. Viewing this as a reduction in pay, she appealed to the Personnel Board of Review of the State of Ohio, which on February 28, 1985 ordered that her use of the vehicle be reinstated.
 
 
 6
 On October 2, 1984, Beaverson established a new set of policies for the three-person office. It required Hanna to make a written request for the use of an agency vehicle, to obtain Beaverson's signature on any piece of outgoing correspondence, and to allow Beaverson to review every piece of incoming mail addressed to the office.
 
 
 7
 From October to November 1984, an exchange of accusations between Hanna and Beaverson further increased tension in the office. In November 1984, Hanna filed an unfair labor practice charge against the Commission, asserting that she was being targeted for abuse because of her union affiliation.
 
 
 8
 On January 18, 1985, Beaverson instituted a policy requiring Hanna to maintain a daily log sheet, recording her activities. On January 31, 1985, Beaverson gave Hanna notice of the Commission's intention to suspend her for three days without pay for failing to file her daily time sheets.[1] On February 5, 1985, Hanna filed a charge of sexual discrimination against the Commission with the United States Equal Employment Opportunity Commission. After July 26, 1985, when Hanna filed suit in district court, the working relationships between Hanna and her colleagues deteriorated further; throughout 1986, Hanna received other reprimands and suspensions for violating office policies.
 
 II
 
 9
 Hanna originally alleged violations of Title VII, 42 U.S.C. Sec. 2000e-2(a)(1), for denial of pay raises and a promotion, and of 42 U.S.C. Sec. 2000e-3(a), for retaliation against her for filing an unlawful employment practice charge with the Ohio Civil Rights Commission and for filing a lawsuit for unlawful employment practices. Hanna also alleged pendent state claims for both intentional and negligent infliction of emotional harm.
 
 
 10
 Hanna's complaint was twice amended to add six more causes of action: a violation of the Equal Pay Act, 29 U.S.C. Sec. 206(d)(1); a state law claim under Ohio's equal pay act, Ohio Rev.Code Sec. 4111.17(A); a state tort claim against Beaverson for interfering with her employment contract; a claim alleging that Beaverson had acted illegally in his individual capacity under 42 U.S.C. Sec. 1983; a claim for violation of Sec. 1983 for deprivation of constitutional rights under color of state law because of the retaliatory action by the Commission; and a state law claim for defamation of Hanna's business reputation. Hanna voluntarily dismissed all state law claims except the equal pay act violation. Hanna also dismissed the federal Equal Pay Act claim. The Sec. 1983 claims and the O.R.C. Sec. 1411.17(A) claim were submitted to the jury after a trial in January 1988. The jury returned a special verdict of $70,750 for Hanna on the state equal pay claim, $1 in nominal damages and $6000 in punitive damages against Beaverson personally on one Sec. 1983 claim, and $54,750 on the Sec. 1983 sex discrimination claim. The district court did not enter judgment on those verdicts at that time.
 
 
 11
 The Title VII issues were tried to the court. On June 30, 1988, the district court found in favor of the defendants on the principal claim (the Sec. 2000e-2(a)(1) claim) and in favor of Hanna in the amount of $398.28 on the retaliation claim (under Sec. 2000e-3(a)). The court also entered judgment that day for Hanna for $6001 on the Sec. 1983 claim against Beaverson and for $141,500 on the state equal pay act claim, pursuant to a statutory doubling requirement. The district court still had not entered a judgment on the Sec. 1983 sex discrimination claim.
 
 
 12
 On July 8, 1988, the defendants moved for judgment notwithstanding the verdict.[2] On July 11, 1988, Hanna moved for a new trial on the Title VII claim or, in the alternative, an amended judgment. On September 14, 1988, the court granted the motion for j.n.o.v. on the state equal pay act claim and entered judgment for Hanna for $54,750 on the Sec. 1983 sex discrimination claim. On October 27, 1988, however, the district court also granted a motion for j.n.o.v. on the Sec. 1983 verdict. The Commission had filed the motion on September 22, 1988.
 
 
 13
 Hanna appeals the two j.n.o.v.s. Beaverson cross-appeals the $6001 Sec. 1983 jury verdict and the Commission cross-appeals the $398.28 court judgment for retaliation under Sec. 1983.
 
 
 14
 * The jury returned a verdict for Hanna of $70,750 (doubled to $141,500 by the statute) on the equal pay act claim and $54,750 on the Sec. 1983 claim. The district court set aside both of these verdicts. We hold that the j.n.o.v.s were improperly granted because the defendants failed to meet the requirements of Federal Rule of Civil Procedure 50(b).
 
 
 15
 Rule 50(b) requires that, for a court to entertain a motion for a j.n.o.v. after a trial, the movant must have made a directed verdict motion at the close of all the evidence. The rule states:
 
 
 16
 Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict.
 
 
 17
 (Emphasis added). This rule has been enforced consistently in this circuit and others. See Rymer v. Davis, 754 F.2d 198, 199-200 (6th Cir.), vacated and remanded sub nom. City of Shepherdsville, Ky. v. Rymer, 473 U.S. 901, reinstated, 775 F.2d 756 (6th Cir.1985), cert. denied, 107 S.Ct. 1369 (1987); Johnson v. Rogers, 621 F.2d 300, 305 (8th Cir.1980); House of Koscot Development Corporation v. American Line Cosmetics, Inc., 468 F.2d 64, 67-8 (5th Cir.1972).
 
 
 18
 The Commission moved for a directed verdict at the close of trial on very narrow grounds, which did not include failure to prove intentional sex discrimination. The district court, however, grounded its j.n.o.v.s on Hanna's failure to establish a prima facie case of sexual discrimination. The district court erred by granting the motions for j.n.o.v.s on bases not contained in the Commission's directed verdict motion.
 
 
 19
 In the same proceeding in which the jury returned a verdict for Hanna on the state equal pay act claim and the Sec. 1983 claim, the district court held that Hanna had failed to establish a prima facie case of discrimination under Title VII. The state claim, the Sec. 1983 claim, and the Title VII claim were all based on the same set of facts and the same injury. Because the district court held that a reasonable jury could only find that Hanna did not suffer discrimination on account of her sex, it vacated the judgments entered in Hanna's favor.[3] These j.n.o.v.s were predicated on the district court's Title VII findings, which the Commission did not raise in its directed verdict motion.[4]
 
 
 20
 The Commission did not submit a written directed verdict motion. The defendants' counsel made only the following oral arguments in support of the directed verdict motion: 1) the county was not subject to Sec. 1983 on agency grounds; 2) Beaverson was acting in his private capacity, not under color of state law; 3) the putative Sec. 1983 claims were more correctly either first amendment claims for the freedom to associate with a union or due process claims for proper administrative relief; and 4) there was no evidence to justify the imposition of punitive damages against Beaverson. The directed verdict transcript reveals that although Hanna's counsel argued that there was evidence of sexual discrimination, the defendants' counsel did not argue that there was no sexual discrimination. Because the reasons articulated by the district court for granting the j.n.o.v.s were not presented by the defendants in any way during the proceedings on the motion for directed verdict, the district court erred by setting aside the jury's verdict.
 
 
 21
 The policy underlying the rule that a judgment notwithstanding the verdict cannot assert a ground that was not included in the motion for a directed verdict is sound. This prerequisite to a motion for j.n.o.v. affords the non-moving party an opportunity to respond and to present additional evidence before the case is presented to the jury. Were the requirement in Rule 50(b) not enforced, the non-moving party's seventh amendment rights would be placed in jeopardy. See Bonjorno v. Kaiser Aulminum & Chemical Corp., 752 F.2d 802, 814 (3d Cir.), cert. denied, 477 U.S. 908 (1984). We therefore reverse the district court's September 14, 1988 and October 27, 1988 orders granting the Commission's motions for j.n.o.v.
 
 B
 
 22
 Hanna's next argument is that in deciding the legal issues on the Title VII claim, the district court was bound by the jury's factual findings on the overlapping equitable claim. On January 22, 1988, the jury found that Hanna was discriminated against on account of her sex and returned a verdict against the Commission. On June 30, 1988, however, the district court entered a judgment for the Commission on the Sec. 2000e-2(a)(1) claim. Hanna contends that the jury's verdict estopped the district court from finding that she was not a victim of sexual discrimination in violation of Title VII. We agree.
 
 
 23
 In In re Lewis, 845 F.2d 624 (6th Cir.1988), we held that the district court erred when it ignored a jury's finding of discrimination. We confirmed the common law rule that "a judge deciding an equitable issue is bound by the jury's factual findings on an adjoining legal claim." Id. at 629. As held above (Section II A), the jury's verdict in this case could not properly be overturned on a motion for j.n.o.v. We therefore hold that the district court erred by entering judgment for the Commission when it remained bound by the jury's finding of sex discrimination. The June 30, 1988 Title VII judgment is reversed and remanded for proceedings consistent with this opinion.
 
 C
 
 24
 Hanna next appeals two findings of fact made by the district court during the Title VII portion of the proceedings that she argues warrant reversal.[5] Our review is governed by the "clearly erroneous" standard. United States v. United States Gypsum, 333 U.S. 364, 394-395 (1948).
 
 
 25
 We have carefully reviewed the record and considered Hanna's claims and conclude that they are without merit. The district court's findings, read properly in their context, are supported by the evidence and not clearly erroneous.
 
 
 26
 Hanna also claims that the district court committed reversible error by not allowing in evidence certain documents during the Title VII phase of the case. Hanna argues that the excluded documents would have helped to prove the pretextual nature of the Commission's defenses to the sex discrimination claim.
 
 
 27
 Trial judges have broad discretion to exclude evidence. See, e.g., Big O Tire Dealers v. Goodyear Tire & Rubber Company, 561 F.2d 1365, 1372 (10th Cir.1977). Hanna offers no convincing proof that the district court abused its discretion. We therefore reject Hanna's argument that the district court erred in excluding this evidence.
 
 III
 
 28
 The defendants cross-appeal on basically three grounds. Beaverson appeals the denial of his motion for j.n.o.v. The Commission appeals the judgment against it under Title VII on the ground that it is not supported by the evidence. The Commission also appeals the denial of its motion for a new trial.
 
 
 29
 * The district court returned a verdict awarding Hanna $1 in nominal damages and $6000 in punitive damages, assessed against Beaverson in his individual capacity, on one of the Sec. 1983 counts. Beaverson moved for a judgment notwithstanding the verdict.
 
 
 30
 Punitive damages are available under Sec. 1983 only when the defendant was motivated by an evil motive or intent. Smith v. Wade, 461 U.S. 30 (1983). Beaverson argues that he could not have been motivated by some illegitimate animus because he did not know that Hanna was a union member (union affiliation being the reason for her persecution) until after the discriminatory activity occurred. Hanna complained that the discrimination against her began in 1984, while Beaverson testified that he did not learn of her union affiliation until August 1986. Hanna adduced contradictory evidence that Beaverson knew as early as October or November 1984 that Hanna was affiliated with the union.
 
 
 31
 We find that the jury's decision to credit Hanna's testimony above Beaverson's was reasonable in light of the evidence presented. Since a reasonable jury could have reached the conclusion which this jury reached, we affirm the district court's refusal to vacate the verdict against Beaverson.
 
 B
 
 32
 The district court granted judgment for Hanna in the amount of $398.28 on the Sec. 2000e-3(a) claim. The district court found that, in retaliation for filing a charge of unlawful employment practices with the Ohio Civil Rights Commission, the Commission denied all of its employees a 3% raise in 1985.
 
 
 33
 Without citing any legal authority for its position, the Commission claims that the district court's judgment for Hanna should be overturned because it is not supported by the evidence. The Commission claims that it had a legitimate, good faith reason for denying the raises.[6]
 
 
 34
 The district court found that the denial of raises across-the-board was designed to stigmatize Hanna among her colleagues. It found this treatment to be discriminatory and not legitimate. This conclusion, in the context of the arbitrary harassment suffered by Hanna, is not clearly erroneous and is supported by the evidence. We therefore affirm the district court's judgment against Hanna on the Sec. 2000e-3(a) claim in the amount of $398.28.
 
 C
 
 35
 The Commission filed motions for a new trial, pursuant to Federal Rule of Civil Procedure 59(a), along with its motions for j.n.o.v. on the state equal pay act and the Sec. 1983 claims. After granting the j.n.o.v.s, the district court did not rule on the 59(a) motions. Fed.R.Civ.P. 50(c)(1) provides:
 
 
 36
 If the motion for judgment notwithstanding the verdict ... is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.
 
 
 37
 The Commission argues that in the event that we overturn the district court's j.n.o.v.s (which we do here today), the district court's failure to rule on the 59(a) motions severely jeopardizes its interests. We disagree.
 
 
 38
 This case shall be remanded for proceedings not inconsistent with this opinion. The motions for a new trial remain pending and subject to resolution by the district court. The Commission has not been and will not be prejudiced, therefore, by the district court's prior failure to rule on the 59(a) motions.
 
 
 39
 For the foregoing reasons, we reverse the district court's orders granting the Commission's motions for j.n.o.v. on the state equal pay act claim and the Sec. 1983 claim; we reverse the district court's judgment for the Commission on the Sec. 2000e-(2)(a)(1) claim; we affirm the district court's denial of Beaverson's motion for j.n.o.v. on the Sec. 1983 claim; and we affirm the judgment for Hanna on the Sec. 2000e-3(a) claim.
 
 
 
 [1]
 On February 22, 1985, Beaverson signed the order of the Commission suspending Hanna for three days. An administrative law judge for the state Personnel Board of Review ruled on June 13, 1985 that Beaverson was without authority to suspend Hanna
 
 
 [2]
 The Commission and Beaverson made separate j.n.o.v. motions. The court granted the Commission's motion but denied Beaverson's motion
 
 
 [3]
 On October 27, 1988, the district court vacated the judgment on the Sec. 1983 claim for the same reasons it had vacated the judgment on the state equal pay act claim on September 14, 1988
 
 
 [4]
 In fact, the Commission could not have relied on the court's Title VII findings when arguing its directed verdict motion, since the district court had not yet ruled on the equitable claims. That the court had not yet made its Title VII findings did not, of course, preclude the Commission from raising similar arguments in its directed verdict motion, in anticipation of the court's findings
 
 
 [5]
 First, Hanna appeals the district court's finding that "plaintiff voluntarily performed special projects for the Commission and ... voluntarily assumed a number of additional duties...." Second, Hanna appeals the district court's determination that "no person of the opposite sex from plaintiff has been hired during her tenure."
 
 
 [6]
 The Commission's explanation was that "we talked it over and we decided while things were still in litigation we wouldn't give any raises."