Wayne ALEXANDER, Plaintiff,

v.

Joshua NEWMAN, in his individual and official capacity; Mark A. Whiteside, individually and in his official capacity; Christopher Luhrs, individually and in his official capacity; and the City of Memphis, Defendants.

No. 02–2983–DV.

United States District Court, W.D. Tennessee, Western Division.

Nov. 22, 2004.

clerk of the district court, by the appellant or petitioner.

Claiborne Hambrick Ferguson, Law Office of Clairborne Ferguson, Memphis, TN, for Plaintiff.

Thomas E. Hansom, Esq., Debra L. Fessenden, Esq., Hansom Law Office, Earle J. Schwarz, Esq., Glankler Brown, PLLC, Robert L.J. Spence, Jr., Esq., The Hardison Law Firm, Memphis, TN, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS JOSHUA NEWMAN AND CHRISTOPHER LUHRS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

DONALD, District Judge.

This matter is before the Court on the motion of Defendant Joshua Newman ("Newman") and Christopher Luhrs ("Luhrs") (collectively "Defendants") to dismiss the complaint of Plaintiff Wayne Alexander pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Defendants seek the summary adjudication of Plaintiff's claims. The complaint, brought *inter alia* pursuant to 42 U.S.C. § 1983, alleges violations of Plaintiff's rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as well as claims for negligence and intentional and negligent infliction of emotional distress. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the Court grants in part and denies in part Defendants' motion to dismiss.[1]

### I. Factual Background[2]

The following facts are presumed to be true for purposes of the instant motion only. On January 4, 2002, Defendants Mark Whiteside ("Whiteside") and Joshua Newman were employees of the Memphis City Police Department. On that day, Whiteside and Newman observed Plaintiff walking through a vacant parking lot.

---

1. There has been no discovery conducted in the instant action. Therefore, although the motion is styled as one to dismiss or in the alternative for summary judgment, the Court finds that the motion should be considered pursuant to the standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b)(6) (stating that if "matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided for in Rule 56....").

2. Except as noted, facts are taken both from Plaintiff's complaint and from Defendants' motion to dismiss and Plaintiff's response to the motion to dismiss.

Whiteside and Newman approached Plaintiff and accused him of breaking into a nearby building. When Plaintiff denied that he had broken into the building, Whiteside and Newman told Plaintiff, "We're gonna beat your ass and send you to the MED." Whiteside and Newman then told Plaintiff to put his hands on the patrol car, whereupon they proceeded to search him. During the search, Newman asked Plaintiff questions, and when Plaintiff attempted to answer, Whiteside struck Plaintiff on his hands. Plaintiff's hands were struck approximately eight to ten times. Towards the end of Newman's questioning, Newman said to Plaintiff, "We're really gonna have some fun with you and send you to the MED."

Soon after Newman made this statement, another patrol officer approached the scene and asked if Newman and Whiteside needed assistance. Newman and Whiteside told the patrol officer that they did not. The patrol officer continued to watch the scene from her car for about five minutes, and then she drove away. After the patrol officer left, Newman and Whiteside told Plaintiff to put his hands on the trunk of the patrol car, continued to question Plaintiff, and hit Plaintiff on his lower back and thighs with a sap. Defendants Newman and Whiteside also told Plaintiff for the third time, "We're gonna beat your ass." Plaintiff received approximately ten blows with the sap.

Fearing for his life, Plaintiff ran toward an apartment building. After approximately ten yards, Plaintiff either fell or was caught by Whiteside and Newman. As Plaintiff attempted to stand, he was struck on his head with a sap. Plaintiff managed, however, to get up and run for approximately ten more yards. When Whiteside and Newman caught Plaintiff, they repeatedly struck Plaintiff on his head, back, and ribs with their saps and feet after Plaintiff had submitted to their

authority. The Memphis Fire Department later arrived and took Plaintiff to a hospital.

Plaintiff asserts that at the time of the incident, Defendant Luhrs was employed as a shift commander of the North Precinct. Plaintiff further contends that Defendants Whiteside and Newman were acting on behalf of and under the control of Defendant Luhrs. Plaintiff also alleges that Luhrs and the City of Memphis failed to properly train Newman and Whiteside and failed to instruct them in the proper use of force. Finally, Plaintiff contends that Luhrs negligently supervised Newman and Whiteside and failed to take reasonable measures to prevent them from harassing the public.

At the time of the incident, Luhrs was a Lieutenant, acting as shift commander for the Delta "D" shift at the North Precinct. (Mot. of Defs. Newman and Luhrs to Dismiss and/or in the Alternative for Summ. J., Aff. of Luhrs at 1). The "D" shift hours are from 5:00 pm to 1:00 am. *Id.* Luhrs' duties included supervising those officers assigned to the "D" shift, monitoring calls, preparing paperwork and handling other matters related to the "D" shift officers. *Id.* at 2. Newman and Whiteside were assigned to the Charlie "C" shift at the time of the incident. The "C" shift hours are from 2:00 pm to 10:00 pm. *Id.*

In his position as Lieutenant, Luhrs was not responsible for the training of officers, as such training is conducted at the Police Training Academy. *Id.* Moreover, Luhrs does not make policy for the City of Memphis Police Department. *Id.* at 3. In the normal course of business, when a suspect resists arrest, the officer is to call for a supervisor and advise him or her of the incident. *Id.* at 2. The supervisor normally goes to the scene, checks for injuries to the officer and suspect, and prepares an incident report. *Id.*

Shortly after Whiteside called his "C" shift supervisor to report the incident, the "C" shift was ordered to come back to the precinct as it was the end of the shift. *Id.* The "C" shift supervisor was about to go off duty and thus asked Luhrs to cover the call for a supervisor. *Id.* Luhrs agreed and dispatch was notified. *Id.* Luhrs met with Whiteside, who then reported the incident. *Id.* at 3. Plaintiff was not at the scene when Luhrs met with Whiteside. *Id.* Prior to signing the arrest ticket, Luhrs went to the hospital where Plaintiff was being treated. *Id.* Luhrs took information down for the incident report, signed the arrest ticket, and left. *Id.* Luhrs was not present at the time of the incident which involved Plaintiff and Whiteside and Newman. *Id.* Luhrs likewise asserts that he was not in a position to prevent the incident, and he did not encourage the behavior of Whiteside and Newman. *Id.*

Defendants Newman and Luhrs assert that 1) Plaintiff failed to state a cause of action pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Fifth, Eighth or Fourteenth Amendments, 2) Plaintiff failed to state a cause of action for intentional or negligent infliction of emotional distress, 3) Defendants are immune from state negligence and assault and battery claims, and 4) state law does not permit punitive damages to be awarded against governmental employees.

## II. Legal Standard

A party may bring a motion to dismiss for failure to state a claim under Rule 12(b)(6). This motion only tests whether the plaintiff has pleaded a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke*

*v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke,* 490 U.S. at 326–27, 109 S.Ct. 1827; *Lewis v. ACB Bus. Serv., Inc.,* 135 F.3d 389, 405 (6th Cir.1997). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied.

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99; *Westlake,* 537 F.2d at 858. The plaintiff, however, has an obligation to allege the essential material facts of the case. *Scheid,* 859 F.2d at 436–37.

In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the court. *Neitzke,* 490 U.S. at 327, 109 S.Ct. 1827; *Murphy v. Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997). Where there are conflicting interpretations of the facts, they must be

construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). However, legal conclusions or unwarranted factual inferences should not be accepted as true. *Lewis*, 135 F.3d at 405–06. If "matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided for in Rule 56...." Fed.R.Civ.P. 12(b)(6).

On a motion to dismiss on the basis of qualified immunity, in addition to those facts alleged in the complaint, the court may consider facts supplied by the plaintiff after the defendant raises the affirmative defense. In the Sixth Circuit, there is no heightened pleading requirement in civil rights cases in which the defendant raises the qualified immunity defense. *See Goad v. Mitchell*, 297 F.3d 497, 503 (6th Cir. 2002). Immunity is a defense to liability, not an element of the plaintiff's prima facie case, so the plaintiff need not overcome the defense in the complaint. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). To protect the substance of the qualified immunity defense, however, the district court may "require plaintiffs to produce specific, nonconclusory factual allegations of improper motive before discovery." *Goad*, 297 F.3d at 504–05. Therefore, factual allegations presented in Defendants' and Plaintiff's memoranda in support of or in opposition to this motion to dismiss will also be considered in assessing the motion.

## III. Analysis

Defendant Luhrs' and Newman's motion seeks dismissal of Plaintiff's claims 1) pursuant to 42 U.S.C. § 1983, for violation of the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution (Count I), and 2) for negligent infliction of emotional distress (Count IX). Defendant Newman further seeks to dismiss

Plaintiff's claims for 1) aggravated assault and battery (Count II), 2) intentional infliction of emotional distress (Count IV), and 3) negligence (Count V). Finally, Defendant Luhrs seeks the dismissal of Plaintiff's claim against him for negligence (Count VIII).

### A. Claims pursuant to 42 U.S.C. § 1983

#### 1. Fifth, Eighth, and Fourteenth Amendment Violations

Defendants Newman and Luhrs assert that Plaintiff has not stated a claim pursuant to 42 U.S.C. § 1983 for violation of the Fifth, Eighth, and Fourteenth Amendments. Plaintiff concedes that no cause of action exists based on violations of these amendments. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims raised pursuant to 42 U.S.C. § 1983 based on alleged violations of the Fifth, Eighth, and Fourteenth Amendments.

#### 2. Fourth Amendment Violations

##### a. Qualified Immunity

Defendants argue that they are entitled to qualified immunity as to Plaintiff's Fourth Amendment § 1983 claim. Qualified immunity provides an affirmative defense to governmental officials sued in their individual capacity. "Government officials are entitled to qualified immunity for discretionary acts that do 'not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" *Goad*, 297 F.3d at 501 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," so

the issue should be resolved at the earliest possible stage in the litigation. *Id.* at 200–01, 121 S.Ct. 2151 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)); *Goad,* 297 F.3d at 501, 504. To assess a qualified immunity defense for an alleged violation of a constitutional right, the court uses a two-step analysis. *See Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, the court asks whether, taken in the light most favorable to the plaintiff, the facts alleged show that the officer's conduct violated a constitutional right. *Id.* at 201, 121 S.Ct. 2151. If no constitutional right could have been violated were the allegations proved, then the defendant has established the immunity defense, and no further inquiry is necessary. *See id.* If a constitutional violation could be shown, the second step is to ask if that constitutional right was clearly established. *Id.* The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

■ The claims against Defendants pursuant to § 1983 are based on allegations that (1) Whiteside and Newman used excessive force, resulting in the physical assault of Plaintiff, (2) Whiteside and Newman were acting on behalf of and under the control of Luhrs when they attacked Plaintiff, and (3) Luhrs failed to train Whiteside and Newman properly or to instruct them in the proper use of force. Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Plaintiff alleges violations of his federal rights under the Fourth Amendment to the United States Constitution.

The Court must first decide whether, taking Plaintiff's allegations as the truth, Defendants violated a constitutional right. If so, the Court then asks whether that constitutional right was clearly established at the time of the violation.

■ The Court will evaluate individually the claims against Luhrs and Newman. Plaintiff's Fourth Amendment excessive force claim against Luhrs is based on Luhrs' supervisory role over Whiteside and Newman.[3] Liability of supervisory personnel for actions by subordinates must be based on more than merely the right to control or respondeat superior liability. *Hays v. Jefferson County,* 668 F.2d 869, 872 (6th Cir.1982) (holding in police excessive force case that "simple negligence is insufficient to support liability of high police officers" for allegedly unconstitutional actions by individual officers), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984) (affirming district court verdict that plaintiff alleging § 1983 liability of prison officials for harassment by subordinates had made no showing that any defendant supervisor actively participated in or authorized harassment), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). There must be a "di-

---

**3.** Since Plaintiff does not allege that Luhrs himself used excessive force on Plaintiff, the allegation could only be against Defendant in his supervisory capacity.

rect causal link" between the acts of the individual officers and the supervisors or "direct responsibility" of the supervisors for the subordinates. *See Hays*, 668 F.2d at 872–73. Section 1983 supervisory liability may not be based on a "mere failure to act," a "passive role," or "mere tacit approval." The plaintiff instead must base liability on the supervisor's own "active unconstitutional behavior." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (holding that a genuine issue of material fact as to supervisory liability remained when plaintiff alleged that defendant failed to intervene to stop assault by subordinate, attempted to cover-up the incident, and testified falsely at trial about the incident).

■ Moreover, a supervisor may be held liable for failure to train or instruct subordinate officials if the plaintiff shows that the official either encouraged the misconduct or in some way directly participated in it. *See Hays*, 668 F.2d at 874. If the constitutional violation is

> not alleged to be part of a pattern of past misconduct, a supervisory official ... may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result.

*Id.* at 874 (citations omitted). If a pattern of misconduct is alleged, a "mere 'failure to act' " is still insufficient for liability. *Id.* at 873–74 (quoting *Rizzo v. Goode*, 423 U.S. 362, 376, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)).

■ The alleged beating of Plaintiff by Whiteside and Newman occurred outside of Defendant Luhrs' presence. Plaintiff alleges no facts indicating that Luhrs authorized, approved, or knowingly acquiesced in the alleged assault. Plaintiff states only that Luhrs had a right to control the officers and that the officers were acting on his behalf when they committed the alleged assault. Plaintiff offers no facts that describe the details or extent of Luhrs' control. These allegations do not warrant the imposition of supervisory liability for the purported conduct of Newman and Whiteside.

Plaintiff further asserts, however, that Luhrs failed to properly train Whiteside and Newman and failed to properly instruct Whiteside and Newman in the proper use of force. Luhrs attested that he was not the supervisor of either Whiteside or Newman. Moreover, Luhrs attested that he is neither involved with training or policy making. First, based on the fact that Luhrs is not responsible for training, the Court could not premise Luhrs' liability on his alleged failure to train or instruct Whiteside and Newman. Second, even if Luhrs were responsible for the training and instruction of Whiteside and Newman, Plaintiff has not alleged any facts that would indicate that Luhrs either encouraged the alleged misconduct or in some way directly participated in it. Plaintiff therefore has alleged no facts that would show a constitutional violation to support a § 1983 claim against Luhrs based on his alleged failure to train or supervise either Newman or Whiteside.[4]

Plaintiff has not alleged any unconstitutional behavior by Luhrs that would subject him to supervisory liability for the alleged assault. Therefore, Plaintiff has not offered facts that, taken in the light most favorable to Plaintiff, would show

---

4. Plaintiff relied on *Marchese v. Lucas*, 758 F.2d 181 (6th Cir.1985), for the proposition that Luhrs can be held liable for the failure to supervise. That case, however, dealt with a sheriff who was sued in his official capacity. *Marchese*, 758 F.2d at 188. Moreover, the sheriff's liability was based on the county's official policy. *Id.*

that Luhrs violated Plaintiff's Fourth Amendment rights. Luhrs thus has qualified immunity as to this claim. Accordingly, the Court grants Defendant Luhrs' motion to dismiss this claim.

The Court must next consider whether Newman is entitled to qualified immunity as to Plaintiff's § 1983 claim against him for use of excessive force. The Court must first determine whether the facts alleged, taken in the light most favorable to Plaintiff, establish that Newman's conduct violated the Fourth Amendment.

■ The Fourth Amendment requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure. *Phelps v. Coy,* 286 F.3d 295, 299 (6th Cir.2002) (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The "reasonableness standard" provides a degree of deference to the officer's judgment about the level of force necessary in light of the circumstances of the particular case. *Id.* "The officer's subjective intentions are irrelevant to the Fourth Amendment inquiry." *Id.* (citing *Graham,* 490 U.S. at 397, 109 S.Ct. 1865). Courts have held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right. *See, e.g., Phelps,* 286 F.3d at 301 ("[T]here was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was."); *McDowell v. Rogers,* 863 F.2d 1302, 1307 (6th Cir.1988) ("[A] totally gratuitous blow with a policeman's nightstick may cross the constitutional line."); *Lewis v. Downs,* 774 F.2d 711, 715 (6th Cir.1985) ("The unprovoked and unnecessary striking of a handcuffed citizen in the mouth with a nightstick is clearly excessive.").

Applying the Fourth Amendment reasonableness standard, the Court finds that the facts taken in the light most favorable to Plaintiff, could establish a violation of Plaintiff's Fourth Amendment right. In assessing the reasonableness of Whiteside and Newman's actions, the Court must analyze the events in segments. *See Dickerson v. McClellan,* 101 F.3d 1151, 1161–62 (6th Cir.1996). Plaintiff alleges that Newman and Whiteside stopped and searched him, during which time Whiteside hit Plaintiff's hands when he attempted to speak. During their search, Plaintiff asserts that Whiteside and Newman told him more than once that they were going to beat him up and send him to the hospital. Plaintiff further asserts that Newman and Whiteside hit him on his lower back and thighs while he was standing by the squad car.

Plaintiff contends that when he ran from Newman and Whiteside, they caught him and struck his head with a sap. Plaintiff asserts that he got up and ran, and Whiteside and Newman again caught him, forced him to the ground, and repeatedly struck him on his head, back, and ribs with their saps and feet, even after he fully submitted to Newman and Whiteside's authority. Plaintiff attested that when he was on the ground being hit, he covered his head with his hands and curled into a fetal position. Newman and Whiteside have asserted that Plaintiff attempted to hit them and at one time grabbed at Newman's duty belt. Plaintiff denies that he ever kicked or hit the officers. The Court finds that considering these allegations in the light most favorable to Plaintiff, Plaintiff has established that the force used by Newman and Whiteside was unreasonable in violation of the Fourth Amendment.

■ Having determined that Plaintiff could establish a constitutional violation, the Court must determine whether the constitutional right was clearly established. The "dispositive inquiry in deter-

mining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "[T]he right to be free from excessive force is a clearly established Fourth Amendment right." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir.2001) (decided after *Saucier*). Moreover, as discussed *supra*, courts have held that various types of force applied after the subduing of a suspect, much like the force alleged in the instant action, are unreasonable and a violation of a clearly established right. The Court finds therefore that a reasonable officer engaging in the conduct alleged by Plaintiff would have known that his conduct was unlawful. Accordingly, the Court finds that Defendant Newman is not entitled to qualified immunity. The Court, therefore, denies Defendant Newman's motion to dismiss Plaintiff's Fourth Amendment § 1983 claim.

## B. State Law Claims

### 1. Negligence Claims and Assault and Battery Claim

Defendants assert that the negligence claims asserted against them should be dismissed because governmental employees cannot be held liable under Tennessee law for their alleged negligent acts. Section 29–20–310(b) of the Tennessee Code Annotated provides that "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter...." Tenn.Code Ann. § 29–20–310(b). Section 29–20–205(a) of the Tennessee Code Annotated further provides that "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment ..." except for certain acts or omissions which are not alleged in

the instant action. Tenn.Code Ann. § 29–20–205(a).

■ Thus, pursuant to Tennessee law, the City of Memphis is not immune from suit for many negligent acts which may be committed by its employees. Moreover, pursuant to state statute, governmental employees cannot be sued for acts for which the immunity of the government has been removed. In the instant action, Plaintiff has alleged repeatedly that Newman and Luhrs were employed by the City of Memphis and were doing the City's business at the time the incident at issue occurred. Moreover, none of the parties have denied Plaintiff's allegations that Newman and Luhrs were employed by the City of Memphis. The Court finds, therefore, that Defendants cannot be held liable for the negligent acts that Newman and Luhrs allegedly committed because the City of Memphis has waived its immunity. Accordingly, the Court grants Defendants Luhrs' and Newman's motion to dismiss the negligence claims, Counts V and VIII.

Based on the same statutes, Defendant Newman asserts that Plaintiff's claim for assault and battery should be dismissed. Newman maintains that the City of Memphis has waived its immunity for liability as to the alleged assault and battery committed by a City employee. As such, Newman asserts that, pursuant to Tenn.Code Ann. § 29–20–310(b), no claim can be brought against him for assault and battery because he was a governmental employee.

In *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73 (Tenn.2001), the Court held that the governmental entity was not immune for negligence in failing to take reasonable precautions to protect the plaintiff from the foreseeable risk that she would be assaulted by the defendant's staff member who was known to be physically aggressive. *Limbaugh*, 59 S.W.3d at 84.

The *Limbaugh* Court based its decision on the fact that Tenn.Code Ann. § 29–20–205 removes the government's immunity for negligent acts committed by an employee except when the injury arises out of those torts enumerated in the statute. *Id.* Thus, because assault and battery was not a tort enumerated in the statute, the governmental entity could not claim immunity for its negligence. *Id.*

■ The Court finds that Plaintiff in the instant action is precluded from suing Newman for assault and battery since the City of Memphis would not be immune from liability for the alleged assault and battery. The Court holds that Tennessee case law seems to preclude Plaintiff's claim against Newman for assault and battery because Tenn.Code Ann. § 29–20–205 does not provide immunity to a governmental entity based on an employee's tort of assault and battery, and as such, Tenn.Code Ann. § 29–20–310(b) prohibits a claim from being brought against an employee when the immunity of the governmental entity is removed. Accordingly, the Court grants Newman's motion to dismiss the assault and battery claim.[5]

## 2. Negligent Infliction of Emotional Distress

Defendants assert three arguments in support of their claim that Plaintiff's claim for negligent infliction of emotional distress must be dismissed. First, Defendants assert that the claim of negligent infliction of emotional distress requires that the underlying action resulting in the injury must be unintentional. Second, Defendants contend that Plaintiff has failed to establish a prima facie case of negligent infliction of emotional distress. Finally, Defendants assert that a claim for negligent infliction of emotional distress cannot stand when the plaintiff suffered physical injury as well as mental injury.

■ In Tennessee, a claim for negligent infliction of emotional distress requires that the plaintiff establish the ele-

5. The Court would note that significant distinctions can be made between this case and *Limbaugh* with the primary distinction being that Plaintiff in the instant action is suing the governmental employee tortfeasor for the intentional tort of assault and battery. In *Limbaugh*, the issue of whether the intentional tortfeasor was immune from suit for her tortious actions committed as a governmental employee was not raised and thus was waived. *Id.* at 86. The Court would further note that nothing in the language of Tenn. Code Ann. § 29–20–205 would appear to preclude a party from bringing an action against a governmental employee tortfeasor for an intentional tort because that statute seems to define a governmental entity's liability for negligence arising from an intentional tort. In fact, the language of Tenn.Code Ann. § 29–20–205(a) provides that the governmental entity "shall not be immune for injury proximately *caused by a negligent act or omission* of any employee within the scope of his employment . . . ." (emphasis added). Moreover, Tenn.Code Ann. § 29–20–310(c) would allow a governmental employee to be sued for cer-

tain willful, malicious or criminal acts when the government is immune from suit. The primary issue however is whether "assault and battery" itself is an act for which the government has waived immunity or whether the governmental entity has waived its immunity only for its negligence resulting from the intentional tort of assault and battery. This appears to be the point that Justice Holder alludes to in her concurrence in *Limbaugh*. However, given that the court determined not to overrule *Potter v. City of Chattanooga*, 556 S.W.2d 543 (Tenn.1977), in its entirety, the Court feels compelled to dismiss Plaintiff's claim for assault and battery against Newman.

Finally, the Court would point out that another considerable difference in those cases in which governmental liability precluded the liability of the employee is that in those cases, it appears that the governmental entity and the governmental employee were actually sued for negligence versus an intentional tort. *See, e.g., Hill v. City of Germantown*, 31 S.W.3d 234, 238 (Tenn.2000); *Erwin v. Rose*, 980 S.W.2d 203 (Tenn.Ct.App.1998).

ments of a general negligence claim: (1) duty, (2) breach of duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation. *Lourcey v. Estate of Scarlett,* 146 S.W.3d 48 (Tenn. Sept.8, 2004) (citing *Camper v. Minor,* 915 S.W.2d 437, 446 (Tenn.1996)). In addition, the plaintiff must establish the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence. *Id.* Tennessee courts have held that when "all of the material allegations involve the intentional, deliberate acts of the defendants," a claim for negligent infliction of emotional distress does not exist. *Tidman v. Salvation Army,* 1998 WL 391765, at *3 (Tenn.Ct.App. July 15, 1998).

 With respect to Defendant Newman, Plaintiff has alleged that Newman assaulted him. All of the allegations against Newman are intentional, deliberate acts. The Court finds therefore that the claim against Newman for negligent infliction emotional distress must be dismissed.

With respect to Defendant Luhrs, Plaintiff has asserted that his failure to train and supervise Newman and Whiteside resulted in the conduct at issue in this case. These actions could potentially be construed as negligent conduct. The Court must therefore determine whether a prima facie case has been asserted.

 Defendant Luhrs asserts that Plaintiff failed to establish that Luhrs had a duty to Plaintiff. Defendant Luhrs contends that he was not responsible for training officers, and therefore had no duty to train Whiteside or Newman. Luhrs further was not responsible for supervising Whiteside and Newman. As such, Luhrs asserts that he owed no duty to Plaintiff. The Court agrees. Defendant Luhrs attested that he was not re-

sponsible for either the training or supervision of Newman and Whiteside. As such, it cannot be said that he owed Plaintiff a duty to properly train and supervise them. Accordingly, the Court finds that Plaintiff failed to establish a prima facie case of negligent infliction of emotional distress against Defendant Luhrs. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim for negligent infliction of emotional distress.

### 3. Intentional Infliction of Emotional Distress[6]

 Defendant Newman asserts that the alleged facts do not support a claim for intentional infliction of emotional distress, otherwise known as outrageous conduct. To establish a claim for outrageous conduct, a plaintiff must establish that the conduct complained of (1) was intentional or reckless; (2) was so outrageous that it is not tolerated by civilized society; and (3) resulted in serious mental injury. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997) (citations omitted). Liability for mental distress damages "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Id.* (quoting *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 398 S.W.2d 270, 274 (1966)). To determine whether conduct is so intolerable as to be outrageous, Tennessee courts apply the following standard enunciated in the Restatement (Second) of Torts § 46, comment d:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or

---

**6.** Intentional infliction of emotional distress and outrageous conduct are different names for the same cause of action. *Moorhead v.*

*J.C. Penney Co., Inc.,* 555 S.W.2d 713, 717 (Tenn.1977).

even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Id.* at 623.

Plaintiff asserts that he was told repeatedly by Whiteside and Newman that they were going to "beat his ass." Plaintiff further asserts that Whiteside and Newman hit him with no provocation when he attempted to answer their questions. Finally, Plaintiff attested that Whiteside and Newman repeatedly struck and kicked him after he had stopped resisting their authority.

■ Newman asserts that this conduct was not so outrageous that civilized society would find them intolerable. The Court disagrees. Unprovoked beatings by officials who are hired to protect and serve the community could certainly be deemed intolerable in a civilized community. Thus, should a jury accept as true Plaintiff's allegations, a jury could determine that Newman's conduct resulted in a claim for intentional infliction of emotional distress. The Court finds therefore that Plaintiff has stated a claim for intentional infliction of emotional distress sufficient to overcome Defendant Newman's motion to dismiss the claim. Accordingly, the Court denies Newman's motion to dismiss the claim for intentional infliction of emotional distress.

## C. Punitive Damages

■ Defendants assert that Plaintiff may not recover punitive damages. In Tennessee, pursuant to the Governmental Tort Liability Act ("GTLA"), punitive damages are not recoverable from a governmental entity or its employees when the action arises out of negligence. *Tipton County Bd. of Educ. v. Dennis*, 561 S.W.2d 148 (Tenn.1978). Thus, to the extent that Plaintiff is seeking punitive damages for negligent acts pursuant to the GTLA, the Court grants Defendants' motion to dismiss.

## IV. Conclusion

For the aforementioned reasons, the Court grants Defendants' motion to dismiss Plaintiff's claims raised pursuant to 42 U.S.C. § 1983 for violations of the Fifth, Eighth, and Fourteenth Amendments. The Court further grants Defendant Luhrs' motion to dismiss Plaintiff's claim raised pursuant to 42 U.S.C. § 1983 for violation of the Fourth Amendment. Likewise, the Court grants Defendants' motion to dismiss Plaintiff's claims for negligence and negligent infliction of emotional distress. The Court grants Defendant Newman's motion to dismiss Plaintiff's claim for assault and battery. The Court denies, however, Defendant Newman's motion to dismiss the claim for intentional infliction of emotional distress and the claim raised pursuant to 42 U.S.C. § 1983 for violation of the Fourth Amendment. Furthermore, the Court denies without prejudice Defendants' motion for summary judgment as no discovery has been conducted at this time.

**IT IS SO ORDERED** this _____ day of November, 2004.